IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VMWARE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-353 (RGA) |
| | ) | |
| SIEMENS AG, SIEMENS CORPORATION, | ) | |
| SIEMENS INDUSTRY SOFTWARE, INC., | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, | ) | |
| INC., SIEMENS HEALTHCARE | ) | |
| DIAGNOSTICS, INC., SIEMENS | ) | |
| MOBILITY, INC., and PETNET | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

<u>**TABLE OF CONTENTS**</u>

**NATURE AND STAGE OF THE PROCEEDINGS** ................................................................. **2**

**SUMMARY OF THE ARGUMENT** ........................................................................................... **2**

**CONCISE STATEMENT OF FACTS** ....................................................................................... **4**

**I.     Siemens AG and VMware are Parties to a License Agreement Executed in
         2012** .................................................................................................................................. **4**

**II.    Siemens AG's and VMware's Dispute Arising Under the MSLA** ............................... **6**

**ARGUMENT** ................................................................................................................................. **7**

**I.     The MSLA's Forum Selection Clause Applies to VMware's Claims** ......................... **8**

       A.     The MSLA's Forum Selection Clause is Enforceable ............................................ 9

       B.     The MSLA's Forum Selection Clause Applies to VMware's Claims ................. 11

**II.    The *Forum Non Conveniens* Factors Confirm Dismissal is Appropriate** ................. **14**

       A.     Factor 1: Plaintiff's Choice of Forum is Owed No Deference ............................ 15

       B.     Factor 2: Germany is a More than Adequate Forum ........................................... 15

       C.     Factor 3: Private Interest Factors Should Not Be Considered Aside from
              the Forum Selection Clause Itself ........................................................................ 16

       D.     Factor 4: Public Interest Factors Weigh in Favor of Enforcing the MSLA's
              Forum Selection Clause ........................................................................................ 17

**CONCLUSION** ........................................................................................................................... **18**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGB Contemp. A.G. v. Artemundi LLC*,
  2021 WL 1929356 (D. Del. May 13, 2021).............................................................9, 13, 15, 17

*Amazon Produce Network, L.L.C. v. NYK Line*,
  679 F. App'x 166 (3d Cir. 2017) ...............................................................................................8

*Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*,
  992 A.2d 1239 (Del. Ch. 2010).........................................................................................11, 14

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
  571 U.S. 49 (2013)...............................................................................................8, 15, 16, 17

*Bonzel v. Pfizer, Inc.*,
  439 F.3d 1358 (Fed. Cir. 2006)................................................................................................14

*Carlyle Inv. Mgmt., L.L.C. v. Carlyle Cap. Corp.*,
  800 F. Supp. 2d 639 (D. Del. 2011)...........................................................................................8

*Collins on behalf of herself v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017)................................................................................9, 14, 15, 16

*Crescent Int'l, Inc. v. Avatar Communities, Inc.*,
  857 F.2d 943 (3d Cir. 1988)....................................................................................................11

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*,
  2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000)...........................................................................13

*Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*,
  545 F.3d 357 (6th Cir. 2008) ..................................................................................................16

*Feite v. Neumann*,
  2020 WL 670135 (E.D. Pa. Feb. 11, 2020) ........................................................................4, 8

*Foster v. Chesapeake Ins. Co.*,
  933 F.2d 1207 (3d Cir. 1991)....................................................................................................8

*Hopco Intermediate Holdings, Inc. v. Jones*,
  2020 WL 6196293 (D. Del. Oct. 22, 2020),
   *report and recommendation adopted*,
  2021 WL 7184249 (D. Del. Jan. 4, 2021)..................................................................9, 10, 17

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997)...................................................................................................10

*In re McGraw-Hill Glob. Educ. Holdings LLC,*
    909 F.3d 48 (3d Cir. 2018) ................................................................................ 11

*Mueller v. Apple Leisure Corp.,*
    880 F.3d 890 (7th Cir. 2018) ............................................................................... 8

*My Size, Inc. v. Mizrahi,*
    193 F. Supp. 3d 327 (D. Del. 2016) ................................................................... 18

*NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale,*
    1999 WL 39539 (S.D.N.Y. Jan. 28, 1999) ......................................................... 15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ............................................................................... 8

*Purohit v. Legend Pictures, LLC,*
    No. 18-1907-RGA, D.I. 33 (D. Del. Nov. 14, 2019) (Andrews, J.) ...................... 2

*Rudisill v. Sheraton Copenhagen Corp.,*
    817 F. Supp. 443 (D. Del. 1993) ....................................................................... 18

*Wit Software v. Talkdesk, Inc.,*
    2023 WL 3454193 (D. Del. May 15, 2023) ........................................................ 15

*Yurchak v. Atkinson & Mullen Travel, Inc.,*
    207 F. App'x 181 (3d Cir. 2006) .......................................................................... 4

Though it dresses up its Complaint as a copyright infringement dispute, a plain reading of the allegations in VMware's Complaint demonstrates this is a dispute regarding whether Siemens AG and its affiliates have exceeded their rights under Siemens AG's license with VMware (which they have not). The first paragraph of VMware's Complaint notes the license between the parties, specifically stating that "[t]he products at issue were originally provided to Siemens AG under license agreements." D.I. 1 ¶ 1. VMware's Complaint extensively quotes from and cites to its license agreements with Siemens AG. Those same license agreements are controlled by a forum selection clause in which the parties agreed to resolve any disputes arising out of the license in the courts of Munich, Germany. And the alleged basis for VMware's infringement claims are reports Siemens AG provided to VMware in connection with the parties' license agreement.

This is the same dispute VMware and Siemens AG have been addressing for more than half a year in Germany with German counsel. More than six months ago, VMware accused Siemens AG of breaching the parties' software license agreements by allegedly using more copies of VMware software than Siemens AG paid to use. Siemens AG has repeatedly denied this claim and likewise has repeatedly explained to VMware why its allegations are incorrect. In fact, this dispute has been documented by more than 10 letters exchanged between the parties' counsel *in Germany*—the country where the parties agreed to resolve any disputes arising out of their license agreement.

Though it cites several portions of the parties' license agreement in its Complaint, one glaring omission from VMware's Complaint is any mention of the forum selection clause. The facts alleged in the Complaint, the documents fairly incorporated into the Complaint by VMware's allegations, and the parties' history on this issue all clearly show that the instant Complaint is a dispute arising out of the parties' license agreement.

For this reason and others, including the fact that the agreement is governed by German law and that this Court is unable to resolve the entirety of the parties' dispute, Defendants move to dismiss this complaint in its entirety pursuant to the doctrine of *forum non conveniens* so the parties can fully resolve their dispute in the forum agreed upon more than a decade ago—the courts of Munich, Germany.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff VMware LLC ("VMware") filed this action on March 21, 2025, against Siemens AG and six of its affiliates: Siemens Corporation, Siemens Industry Software Inc., Siemens Medical Solutions USA, Inc., Siemens Healthcare Diagnostics Inc., Siemens Mobility, Inc., and PETNET Solutions, Inc. (the "Affiliate Defendants") (collectively with Siemens AG, "Defendants"). Defendants have concurrently filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).[1] Through the motion accompanying this brief, Defendants move to dismiss the Complaint in its entirety pursuant to the doctrine of *forum non conveniens* so the dispute can be fully litigated and resolved in Germany, the forum agreed to by the parties.

## SUMMARY OF THE ARGUMENT

This case is a contractual dispute arising out of a 2012 license agreement between VMware and Siemens AG. That contract governs Siemens AG's use of and payment for perpetual licenses to certain VMware software for itself and its affiliates. The parties dispute whether Siemens AG complied with certain use and payment terms of the contract. But the contract provides that such disputes should be raised in Germany in accordance with German law. This fact, along with the fact that the lawsuit filed in this Court will not fully resolve the parties' dispute at least because

---

[1] A motion to dismiss under *forum non conveniens* is not a Rule 12 motion, and therefore is properly brought as a separate motion. *See* Ex. 7 at 1–2 (*Purohit v. Legend Pictures, LLC*, No. 18-1907-RGA, D.I. 33 (D. Del. Nov. 14, 2019) (Andrews, J.)).

the dispute includes worldwide conduct, shows this case should be dismissed to be litigated in Germany.

**First**, the 2012 Master Software License Agreement ("MSLA") forum selection clause is enforceable and applicable to this case.  Courts routinely enforce such clauses, and none of the exceptions to enforcing a forum selection clause apply here.  The forum selection clause applies because this dispute arises out of the MSLA, as is made clear by the allegations in VMware's Complaint showing this is a dispute over use of and payment for software provided under the MSLA.  VMware and Siemens AG discussed these issues for months, through German counsel, in the context of the MSLA.  Only after months of such discussion did VMware first register the copyrights in the Asserted Works—and it did so the same month it filed this Complaint.  Both VMware's Complaint and this conduct confirm this license dispute belongs in Germany under the MSLA's forum selection clause.

**Second**, the relevant *forum non conveniens* factors favor dismissal.  This is a dispute arising under a German contract applying German law, choice of law and forum provisions that were agreed upon by sophisticated parties.  In view of the forum selection clause, VMware's choice of forum in filing this Complaint therefore is owed no deference.  The presence of U.S. affiliates in this case does not change this fact.  The parties agreed in the MSLA that Siemens AG would be responsible for its affiliates' use of the licensed software under their agreement, and thus the dispute can be fully resolved in Germany.  The private interest factors are irrelevant in view of the forum selection clause.  And the public interest factors do not override the parties' forum selection clause either.  Further, the worldwide dispute between Siemens AG and VMware cannot be fully resolved by the Complaint filed in this case.  The MSLA provided a worldwide license, and only a fraction of the alleged wrongdoing by Siemens AG and its affiliates is alleged to have

occurred in the United States. This case should be dismissed pursuant to the doctrine of *forum non conveniens* so that the dispute can be fully resolved in the courts of Munich, Germany.

## CONCISE STATEMENT OF FACTS[2]

### I.    SIEMENS AG AND VMWARE ARE PARTIES TO A LICENSE AGREEMENT EXECUTED IN 2012

On November 28, 2012, VMware and Siemens AG entered into the MSLA. Ex. 1 (MSLA) at 7; D.I. 1 ("Compl." or "Complaint") ¶ 37. Siemens AG is a German company, headquartered and incorporated under the laws of Germany. Compl. ¶ 7. VMware is an American company. Compl. ¶ 6. The MSLA and the Enterprise License Agreement ("ELA") entered into by the parties pursuant to the MSLA, granted Siemens AG rights to each of the software products that are the basis of the infringement allegations in the Complaint. *See* Compl. ¶¶ 27–35; Ex. 2 (ELA) at Exhibit A.

The MSLA set forth "the terms and conditions pursuant to which VMware will license to Customer [(Siemens AG)] and support certain Software products." Ex. 1 (MSLA) at 1. The license permitted Siemens AG to "use the Software products, in accordance with the License Type, that Customer purchases according to the Purchase Order." *Id.* § 2.1; Compl. ¶ 40. It further made clear that Siemens AG could permit its affiliates to use software licensed under this agreement, so long as Siemens AG remained responsible for any breaches of the agreement by those affiliates:

---

[2]    VMware repeatedly cites to and quotes from the MSLA and a number of other documents in its Complaint. Accordingly, those are incorporated into VMware's complaint by reference and the Court can consider those documents in resolving the pending motions. *See, e.g.*, *Feite v. Neumann*, 2020 WL 670135, at *2 (E.D. Pa. Feb. 11, 2020); *Yurchak v. Atkinson & Mullen Travel, Inc.*, 207 F. App'x 181, 184–85 (3d Cir. 2006).

> 13)  Section 2.2 Use of Licenses by Affiliates shall hereby be amended to read as follows:
>
> "Solely for licenses purchased by Siemens AG (not its Affiliates) and except for unlimited licenses of Software the following shall apply: Customer may allow its Affiliates (as defined herein) to Deploy and use the Software, and related Technical Support and Subscription Services, as if it were the "Customer" under this Agreement. For the avoidance of doubt, the number of licenses specified in the Purchase Order is the total number of licenses for the Software which the Customer is entitled to use. Customer shall ensure compliance with the terms of this Agreement with regards to such licenses by each such Affiliate, and any breach by an Affiliate shall be deemed a breach by Customer. The parties shall be free to restrict the Deployment and use of the Licenses and related Technical Support and Subscription Services by an Affiliate in an ELA."

Ex. 3 (Amended MSLA) § 13.[3]  Under these terms, the Affiliate Defendants had a license to the Software "as if [they] were the 'Customer' under this Agreement," and "any breach of an Affiliate shall be deemed a breach by" Siemens AG.  *Id.*

The MSLA also discussed how Siemens AG was to pay VMware for its and its affiliates' rights under this perpetual license agreement.  Specifically, "[u]pon VMware's written acceptance of a Purchase Order from Customer[,] … VMware shall invoice customer for the applicable license fees and fees for the Services, if applicable."  Ex. 1 (MSLA). § 4.1.  The payment terms of the invoice are governed by Section 4.4 of the MSLA, which includes procedures if there is a dispute about the invoiced amount.  For example, Section 4.4 states that "Customer may withhold payment of any disputed amount until the dispute is resolved or until ten (10) days after either party notifies the other, in writing, that it believes resolution of the dispute is unlikely without resort to formal dispute resolution processes."  *Id.* § 4.4.

The MSLA also clearly states where disputes arising under the MSLA would be resolved and what law governed the agreement.  In a paragraph with the heading "Governing Law," the parties agreed German law governed their agreement and that the parties "consent to the exclusive

---

[3]    VMware and Siemens AG amended the MSLA on September 29, 2021. This term was not changed in that amendment, nor were any other terms of the MSLA cited in the Complaint or relied upon in the pending motions.

jurisdiction of the courts of Munich for resolution of any disputes arising out of this Agreement." Ex. 1 (MSLA) § 9.17.

## II.     SIEMENS AG'S AND VMWARE'S DISPUTE ARISING UNDER THE MSLA

As alleged in VMware's Complaint, the parties' dispute under the MSLA goes back to at least September of 2024.  As VMware explains in the Complaint, "[o]n September 9, 2024, Siemens AG sent VMware a letter announcing its intention to exercise the option under the ELA to purchase a one-year renewal of Support Services."  Compl. ¶ 60.  Based on its exercise of that option, Siemens AG sent a formal purchase order to VMware on September 25, 2024.  *Id.* ¶ 67. The parties traded numerous letters and emails on the purchase order.  Compl. ¶¶ 60–70.  After this correspondence failed to resolve the dispute, on December 17, 2024, VMware's Irish affiliate, VMware International Unlimited Company, issued an invoice under the MSLA to Siemens AG at its German address for the "[d]isputed software licenses and support services … ."  Ex. 6 (VMware Invoice).  That is the same "disputed software licenses and support services" forming the basis for VMware's Complaint.  Compl. ¶¶ 66, 70.  Siemens AG repeatedly advised VMware of its position that VMware's arguments and invoice were incorrect and unjustified, a position with which VMware disagreed.  *See* Ex. 6 (VMware Invoice); Compl. ¶¶ 71–75.  Siemens AG's responses to VMware's arguments and invoice form the basis for VMware's repeated assertions that Siemens AG did not rectify the situation at hand.  *See* Compl. ¶¶ 5, 75.

The parties' correspondence regarding this dispute—including those cited repeatedly in the Complaint—focused on the obligations under the MSLA, Siemens AG's deployments, and the proper amounts owed under the agreement.  Compl. ¶¶ 67–70.  VMware's Complaint specifically identifies its October 8, 2024 letter to Siemens AG—more than five months before this suit was filed—in which VMware's German counsel expressly recognized that the dispute about payment and deployments arose under the MSLA (rather than U.S. copyright law).  In that correspondence,

6

VMware "explicitly reserve[d] the right to seek compensation" for alleged "unauthorized overage of its software" for this alleged breach of the parties' license and "***any other breaches*** of contract that may come to light." Ex. 4 (Oct. 8, 2024 Ltr.) at 2; *see also* Compl. ¶ 70. As shown in Exhibit 4 (Oct. 8, 2024 Ltr.), many of the parties' conversations occurred between German counsel for Siemens AG and German counsel for VMware. *See also* Compl. ¶ 69; Compl. ¶ 71.

Then, after months of negotiations between German counsel for both parties, including VMware's invoice for "Disputed software licenses and support services" under the MSLA, VMware, for the first time, began registering copyrights in the Asserted Works in the United States. VMware registered all of the copyrights referenced in its Complaint in March 2025—less than three weeks before VMware filed this Complaint and more than five months after the first letter identified in VMware's Complaint. Ex. 5 (Copyright Registrations). And despite its repeated citations to the MSLA in its Complaint, VMware never addresses the MSLA's forum selection clause.

## **ARGUMENT**

The Complaint should be dismissed in its entirety pursuant to the doctrine of *forum non conveniens* so that the dispute can be fully resolved in the forum the parties agreed upon in their license agreement—the courts of Munich, Germany. In those courts, should VMware choose to pursue these purported claims, Siemens AG will stand responsible for any alleged license breaches by the defendants named in this case, despite believing them to be without merit. Thus, the courts in Munich, Germany will be able to afford complete relief not available in this forum.

Where a dispute arising out of a contract with a forum selection clause is brought in a forum other than the one specified in the clause, even if "the federal court has jurisdiction, it should

decline to exercise it."[4] *Carlyle Inv. Mgmt., L.L.C. v. Carlyle Cap. Corp.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011) (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, n.7 (3d Cir. 1991)). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013); *Amazon Produce Network, L.L.C. v. NYK Line*, 679 F. App'x 166, 168–69 (3d Cir. 2017) (affirming a motion to dismiss on *forum non conveniens* grounds). In considering such a motion, in addition to facts alleged in the Complaint, "[c]ourts may also consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Feite*, 2020 WL 670135, at *2 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). For example, in *Mueller v. Apple Leisure Corp.*, the court affirmed the dismissal of claims of breach of warranty and negligence on *forum non conveniens* grounds based on the forum selection clause in the contract on which plaintiff's claims were based, even though the contract was attached to the defendant's motion to dismiss rather than the plaintiff's complaint. 880 F.3d 890, 895 (7th Cir. 2018).

## I. THE MSLA'S FORUM SELECTION CLAUSE APPLIES TO VMWARE'S CLAIMS

When conducting a *forum non conveniens* analysis based upon a forum selection clause, the Court must first determine whether the forum selection clause is enforceable and whether it

---

[4] Siemens AG disputes that the Court has jurisdiction over it in this action, and it has simultaneously filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Further, all Defendants move to dismiss allegations of extraterritorial infringement under Fed. R. Civ. P. 12(b)(6). Defendants make this motion without waiver of those arguments.

applies to the claims at issue. *See AGB Contemp. A.G. v. Artemundi LLC*, 2021 WL 1929356, at

*7 (D. Del. May 13, 2021). Both elements are met here.

### A.    The MSLA's Forum Selection Clause is Enforceable

"Forum selection clauses are 'typically 'prima facie valid and should be enforced' unless

a plaintiff can demonstrate that 'enforcement would be unreasonable and unjust, or that the clause

was invalid for such reasons as fraud or overreaching.'" *Id*. That means that "a forum selection

clause must be enforced 'unless the party objecting to its enforcement establishes (1) that it is the

result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the

forum, or (3) that enforcement would in the particular circumstances of the case result in litigation

in a jurisdiction so seriously inconvenient as to be unreasonable.'" *Hopco Intermediate Holdings,

Inc. v. Jones*, 2020 WL 6196293, at *1 (D. Del. Oct. 22, 2020), *report and recommendation

adopted*, 2021 WL 7184249 (D. Del. Jan. 4, 2021). None of these exceptions apply, nor has

Plaintiff alleged any apply. The MSLA's forum selection clause should be enforced.[5]

**The MSLA is Not the Result of Fraud or Overreaching**: Siemens AG fairly bargained

for, and the parties agreed upon, a forum selection clause that would ensure disputes arising out of

the MSLA would be resolved in Germany. Ex. 1 (MSLA) § 9.17. VMware nowhere argues in the

Complaint that the MSLA is the result of fraud or overreaching. Nor could it—VMware is a large,

sophisticated party. It has affiliates around the world. In fact, the VMware affiliate that entered

---

[5]    Given the choice of law provision, the enforceability and applicability of the forum selection
clause should be interpreted under German law. For convenience of the Court and consistent
with Third Circuit precedent, Defendants rely on U.S. case law articulating general contract
principles that align with German law. *See Collins on behalf of herself v. Mary Kay, Inc.*, 874
F.3d 176, 180 (3d Cir. 2017) ("A court considering the interpretation of a forum selection
clause applies principles of contract law to determine the scope of the clause").

the license with Siemens AG along with VMware, VMware International Unlimited Company[6], is an Irish company. Ex. 1 at 1 (MSLA); Ex. 3 at 1 (Amended MSLA). Therefore, far from being the result of fraud or overreaching, the MSLA is the product of fair negotiations between two sophisticated parties.

**Enforcement of the MSLA's Forum Selection Clause Would Not Violate Delaware Public Policy**: VMware "has not identified any Delaware public policy that would be contravened by enforcement of the forum selection clauses, and it is doubtful that [it] could do so given Delaware's policy of enforcing forum selection clauses." *Hopco Intermediate Holdings*, 2020 WL 6196293, at *1. Further, VMware does not point to conduct that occurred in Delaware that would result in a public interest in having VMware's claims adjudicated in Delaware. Delaware's public policy in enforcing forum selection clauses dictates that the MSLA's forum selection clause should be enforced.

**Enforcement of the MSLA's Forum Selection Clause Would Not be Unreasonable**: Enforcement of the forum selection clause is not unreasonable. VMware, a sophisticated company, voluntarily entered into the MSLA with Siemens AG, a German company. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997). In doing so, it agreed to a forum selection clause to resolve disputes arising out of the MSLA in German courts. Further, VMware has a strong presence in Europe such that it would not be unreasonable for it to litigate this dispute in Europe—as evidenced by its Irish affiliate, VMware International Unlimited Company, being an additional signatory to the MSLA. Ex. 1 at 1 (MSLA); Ex. 3 at 1 (Amended MSLA). It is not unreasonable to require the parties to live up to their agreement.

---

[6]    VMware International Unlimited Company was known as VMware International Limited at the time of the execution of the 2012 MSLA. The Amended MSLA acknowledges this name change. *See* Ex. 3 at 1 (Amended MSLA).

* * * * *

The MSLA's forum selection clause is *prima facie* valid, and VMware cannot point to an exception that would justify depriving Siemens AG of the forum selection clause agreed to by the parties. Therefore, the MSLA's forum selection clause should be enforced.

### B.     The MSLA's Forum Selection Clause Applies to VMware's Claims

VMware's Complaint makes clear that this is a dispute arising out of the MSLA, and thus the contract's forum selection clause applies. The Third Circuit has explained that "[g]iven the unique nature of copyright claims, we recognize that we should not permit a party to avoid a forum selection clause simply by pleading non-contract claims." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 68 (3d Cir. 2018); *see also Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (finding there is a "principle that pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms"); *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (recognizing that in Delaware and other jurisdictions, '[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship.'"). Here, VMware's claims plainly grow out of the parties' contractual relationship concerning payments due under the MSLA, and are merely an attempt to escape the MSLA's forum selection clause which would require VMware to resolve this dispute in Germany. In fact, VMware did not register the copyrights asserted in this case until months after the dispute between the parties had begun, reflecting VMware's desire to avoid the MSLA's forum selection clause through pleading non-contract claims. *See* Ex. 5 (Copyright Registrations).

The forum selection clause applies to VMware's Complaint because the dispute arises out of the MSLA and the alleged lack of compliance therewith. This is apparent throughout the

Complaint. *See, e.g.*, Compl. ¶¶ 1, 4, 20–21, 36–54. From the first paragraph, VMware alleges that the software at issue in its claims was provided to Siemens AG pursuant to a license agreement, the MSLA. *Id.* ¶ 1. "Based on the MSLA, VMware and Siemens AG entered into Enterprise License Agreements … Pursuant to the ELA, Siemens AG purchased licenses to a specific number of copies of VMware software products." *Id.* ¶¶ 43, 45. In exchange for perpetual licenses to VMware products, Siemens AG paid a "required license fee." *Id.* ¶ 78. VMware alleges that the number of licenses shown in Siemens AG's September 9 letter to VMware provided pursuant to the MSLA did not match VMware's records reflecting how many licenses Siemens AG had purchased. *Id.* ¶ 66. In other words, VMware contends that Siemens AG over-deployed certain licenses and therefore owes VMware additional money. *Id.* ¶ 70.[7]

Indeed, throughout the Complaint, VMware's allegations reveal that its claims relate to a dispute over payment under the MSLA and ELA for alleged over-deployment of software. The following exemplary allegations demonstrate this point:

- Under the MSLA, "for licenses purchased by Siemens AG as the Customer, Siemens AG could allow its affiliates to deploy and use the VMware software products covered by the license," meaning Siemens AG and its affiliates use of VMware software is licensed up to the number of licenses purchased by Siemens AG. *Id.* ¶ 53

- The parties engaged in discussions between German counsel over whether Siemens AG's payment for deployment of software was proper under the MSLA and ELA, such that its payment provided it with licenses covering its software use. *Id.* ¶¶ 59–69.

- VMware informed Siemens AG that it believed it was owed "'compensation for the unauthorized overage of its software and support services.'" *Id.* ¶ 70.

---

[7]  Throughout the communications between the parties, Siemens AG has maintained, and continues to maintain, that its purchase order for the renewal of VMware support services is proper based on its use of VMware products and its rights under the ELA. *See, e.g.* Compl. ¶ 67. Therefore, no additional payment is required.

Thus, as VMware itself has framed the issue, the question in dispute is whether Siemens AG and its affiliates have used copies of VMware software in excess of the payment provided under the MSLA. Indeed, VMware issued an invoice to Siemens AG for this alleged excess use of licensed software, describing the invoice as being for "[d]isputed software licenses and support services that were not listed in Broadcom's SOYR Installed Base overview dated September 20, 2024." Ex. 6 (VMware Invoice); Compl. ¶¶ 66, 70. The MSLA explicitly contemplates mechanisms for resolution of such payment disputes. Ex. 1 (MSLA) § 4.4. This is plainly a "dispute[] arising out of" the MSLA, thus implicating its forum selection clause, even if VMware has tried to plead it as something else. *See id.* § 9.17. Yet VMware notably does not even attach the MSLA to its Complaint, despite its extensive reference to it, presumably in an attempt to avoid the forum selection clause, which VMware does not even discuss or explain why his dispute allegedly does not arise thereunder.

Courts facing similar situations—in which a plaintiff has tried to avoid a forum selection clause by pleading non-contractual claims—have granted motions to dismiss based on the relevant contract's forum selection clause. For example, in *Direct Mail*, the court dismissed plaintiff's claims pursuant to *forum non conveniens* after finding that plaintiff's copyright infringement claims there, as here, fell under the forum selection clause of the contract under which defendant gained access to the copyrighted materials, noting that "analysis of the copyright infringement claims will inevitably require reference to rights and duties defined in the [contract]." *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000); *see also AGB Contemp. A.G.*, 2021 WL 1929356, at *7–9 (dismissing plaintiff's claims under *forum non conveniens* because, while the claims were not directly about the contract with a forum selection clause, the clause was broad and plaintiff's "allegations admit the required connection" to the

relevant contract); *Ashall Homes Ltd.*, 992 A.2d at 1252 (remarking that a "'forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship.'").

The forum selection clause also applies to VMware's claims against the Affiliate Defendants.  VMware and Siemens AG agreed that Siemens AG "may allow its Affiliates … to Deploy and use the [licensed] Software," and that "any breach by an Affiliate shall be deemed a breach by [Siemens AG]."  Ex. 3 (Amended MSLA) § 13.  VMware's decision to name U.S. affiliates as defendants does not change that the counterparty to VMware under the applicable agreement is Siemens AG.  Further still, any alleged copyright infringement by the Affiliate Defendants will require interpretation of the MSLA and accompanying agreements, which are to be construed under German law.  Ex. 1 (MSLA) § 9.17.  Courts in Munich are best equipped to do that.  *See Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363–64 (Fed. Cir. 2006) (agreeing that litigation concerning a contract that "by its terms requires interpretation and application of German law" was "best conducted in Germany.").

## II.    THE *FORUM NON CONVENIENS* FACTORS CONFIRM DISMISSAL IS APPROPRIATE

Courts typically consider four factors when conducting a *forum non conveniens* analysis: "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum."  *Collins*, 874 F.3d at 186. Where a forum selection clause applies, no deference is to be given to plaintiff's choice of forum and no private interest factors are to be considered (factors 1 and 3).  *See id.*  In that situation, courts therefore "only consider the second and fourth factors, which the Supreme Court instructs

14

will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances. The party resisting application of a forum selection clause 'bears a heavy burden.'" *AGB Contemp. A.G.*, 2021 WL 1929356, at *9 (footnote omitted). Though only the second and fourth factors need be addressed, for completeness, Siemens addresses all four below.

## A.    Factor 1: Plaintiff's Choice of Forum is Owed No Deference

Where, as here, a forum selection clause applies, the plaintiff's choice of forum in filing its lawsuit "merits no weight." *Atl. Marine Const. Co.*, 571 U.S. at 63; *see also Collins*, 874 F.3d at 186. Indeed, Siemens AG bargained for and received a forum selection clause in the MSLA so that disputes regarding the contract would be resolved in its home forum. And as discussed above, Siemens AG has both rights and responsibilities for the Affiliate Defendants, which rights and responsibilities will require interpreting the MSLA under German law. VMware, a sophisticated party, should not be permitted to avoid its agreement of forum simply because it now prefers to resolve the dispute in the U.S. The forum selection clause in the MSLA should be enforced.

## B.    Factor 2: Germany is a More than Adequate Forum

The courts of Munich, Germany are the proper forum to hear this dispute regarding the MSLA. "[A]n adequate alternative forum is one in which the defendant is amenable to process and the plaintiff's claims are cognizable." *Wit Software v. Talkdesk, Inc.*, 2023 WL 3454193, at *3 (D. Del. May 15, 2023). Siemens AG is amenable to process in Germany. United States District Courts conducting a *forum non conveniens* analysis have found that Germany is an adequate alternative forum to hear disputes regarding an alleged breach of contract, and further that the application of German law to the contract at issue made German courts the preferred forum. *See, e.g.*, *NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale*, 1999 WL 39539, at *2–3 (S.D.N.Y. Jan. 28, 1999). VMware's claims concern an alleged breach of the MSLA, and

thus the courts of Munich, Germany are more than an adequate alternative forum to resolve this German contractual dispute.

The fact that the six Affiliate Defendants are also named in this case does not alter this analysis. The MSLA provides the Affiliate Defendants with both rights and responsibilities, with the parties agreeing that Siemens AG would be responsible for any alleged breach of the MSLA by Siemens AG's affiliates. Ex. 1 (MSLA) § 2.2. A foreign forum is an appropriate alternate forum when an affiliated company, especially "the entity with whom plaintiff[] contracted," is amenable to service there. *See Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 365 (6th Cir. 2008). Thus, VMware can recover from Siemens AG in Germany for any alleged breach by the Affiliate Defendants. Further, any alleged overuse of VMware's software by the Affiliate Defendants is a dispute regarding the terms of the MSLA. That dispute over use and payment under the MSLA is precisely what the parties agreed to litigate in Germany under German law. VMware's claims, which arise out of the MSLA and identify no reason why the courts of the United States are necessary to address this dispute, can be adequately and completely addressed in Germany.

### C.    Factor 3: Private Interest Factors Should Not Be Considered Aside from the Forum Selection Clause Itself

Where there is an applicable forum selection clause, the court "should not consider arguments about the parties' private interests" aside from those embodied in the forum selection clause. *Atl. Marine Const. Co.*, 571 U.S. at 64; *see also Collins*, 874 F.3d at 186. Indeed, the only private interest that may be considered is that the parties agreed that any dispute arising out of the MSLA would be resolved in the courts of Munich, and that factor weighs squarely in favor of enforcing the MSLA's forum selection clause. Again, this applies equally to the Affiliate Defendants.

16

**D.    Factor 4: Public Interest Factors Weigh in Favor of Enforcing the MSLA's Forum Selection Clause**

The fourth factor also supports effectuating the forum selection clause.  As the Supreme Court has found, a party "acting in violation of the forum-selection clause … [must] show[] that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Const. Co*, 571 U.S. at 67. Delaware courts have consistently found that the public interest favors the enforcement of forum selection clauses.  *See, e.g.*, *Hopco Intermediate Holdings*, 2020 WL 6196293, at *1.  VMware has offered no contradicting interest.

The applicability of German law to the MSLA demonstrates the public interest in having the case heard in Germany.  Courts have suggested that public interest factors weigh in favor of a case being brought where the courts are familiar with the applicable law.  *Atl. Marine Const. Co*, 571 U.S. at 67; *AGB Contemp. A.G.*, 2021 WL 1929356, at *9.  Here, German law governs the interpretation of the MSLA as it applies to software used by both Siemens AG and the Affiliate Defendants, and thus German courts have the greatest familiarity with the law governing the MSLA.  Ex. 1 (MSLA) § 9.17.

Indeed, VMware's own complaint supports the fact that this dispute is not centered around Delaware or the United States.  VMware alleges that, according to the October 29 report, only "approximately 20% of the VMware products were deployed in Siemens operations in the United States." Compl. ¶ 81.  This allegation is plainly based on VMware's inferences from the October 29 report of ***deployments*** that the alleged ***excess*** deployments follow the same proportion.  *See* Compl. ¶¶ 80–81.  But even that inference shows Delaware has no substantial interest in this case, as it suggests that approximately 80% of the alleged excess deployments of VMware software occurred ***outside*** of the United States, and at least that many occurred outside of Delaware.  Even though VMware disputes whether these numbers include all deployments by Siemens, where this

large of a percentage of the alleged wrongdoing took place outside of the United States, it is clear Delaware does not have a sufficient public interest to overrule the parties' agreed forum. *See, e.g.*, *My Size, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 335 (D. Del. 2016) ("While there is a local interest in deciding cases where a party is incorporated in Delaware, the controversy in this case is not local as all the transactions were negotiated and performed in Israel."); *Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 448 (D. Del. 1993) ("The crux of this action centers around events which occurred in Denmark and the citizens of Delaware should not be required to determine the duty of care that a hotel, operating in Denmark, owes to its guests under Danish law.").

* * * * *

The relevant factors weigh in favor of enforcement of the MSLA's forum selection clause. Because the MSLA's forum selection clause is enforceable and applies to the claims at issue here, and VMware has not met its "heavy burden" to show that the forum selection clause voluntarily entered into by the parties should be ignored, VMware's claims should be dismissed pursuant to the doctrine of *forum non conveniens* so that the parties' dispute may instead be heard and resolved in the courts of Munich, Germany.

## <u>CONCLUSION</u>

For all the foregoing reasons, VMware's complaint should be dismissed pursuant to the doctrine of *forum non conveniens*.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

OF COUNSEL:

Gregg F. LoCascio, P.C.
Michael A. Pearson, Jr.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

James John Lomeo
KIRKLAND & ELLIS LLP
401 Congress Avenue
Suite 2500
Austin, TX  78701
(512) 678-9050

June 10, 2025

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants Siemens AG, Siemens Corporation, Siemens Industry Software Inc., Siemens Medical Solutions USA, Inc., Siemens Healthcare Diagnostics Inc., Siemens Mobility, Inc., and PETNET Solutions, Inc.*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 10, 2025, upon the following in the manner indicated:

Paul J. Loughman, Esquire                                    *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
Colin A. Keith, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*Attorneys for Plaintiff*

David H. Herrington, Esquire                                 *VIA ELECTRONIC MAIL*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000
*Attorneys for Plaintiff*

Angela L. Dunning, Esquire                                   *VIA ELECTRONIC MAIL*
Ye Eun Charlotte Chun, Esquire
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, California 94304
(650) 815-4100
*Attorneys for Plaintiff*

                                                    */s/ Karen Jacobs*
                                                    _____
                                                    Karen Jacobs (#2881)