IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VMWARE LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>SIEMENS AG, SIEMENS CORPORATION, SIEMENS INDUSTRY SOFTWARE, INC., SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS HEALTHCARE DIAGNOSTICS, INC., SIEMENS MOBILITY, INC., and PETNET SOLUTIONS, INC.,<br><br>                Defendants. | C.A. No. 25-353-RGA-LDH<br><br>FILED<br><br>FEB 1 0 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |

## REPORT AND RECOMMENDATION

Plaintiff VMware LLC ("VMware") asserts a three-count complaint for copyright infringement against Defendants Siemens AG and its U.S. affiliates Siemens Corporation, Siemens Industry Software, Inc., Siemens Medical Solutions USA Inc., Siemens Healthcare Diagnostics Inc., Siemens Mobility Inc., and PETNET Solutions Inc. (the "Affiliate Defendants" and collectively with Siemens AG, the "Defendants").

Defendants move to dismiss VMware's complaint pursuant to the doctrine of *forum non conveniens* (D.I. 22, the "*Forum Non Conveniens* Motion"), lack of personal jurisdiction over Siemens AG pursuant to Rule 12(b)(2) (D.I. 17, the "Personal Jurisdiction Motion"), and failure to state a claim for extraterritorial enforcement of VMware's U.S. copyrights pursuant to Rule 12(b)(6) (*Id.*, the "Failure to State a Claim Motion"). These motions are fully briefed (D.I. 18, 31, and 34 (briefing on *Forum Non Conveniens* Motion); D.I. 23, 32, and 35 (briefing on Personal

Jurisdiction Motion and Failure to State a Claim Motion). The motions were referred to me on October 2, 2025. (D.I. 37). I held oral argument on November 18, 2025 (D.I. 45, hereinafter "Tr.") and ordered supplemental briefing. (D.I. 39, 40). VMware moved to file a sur-reply (D.I. 41, D.I. 43), and Siemens opposed (D.I. 42). VMware's motion to file a sur-reply was also referred to me. (D.I. 44).

For the following reasons, I recommend denying Defendants' *Forum Non Conveniens* Motion, granting Defendants' Personal Jurisdiction Motion as to Siemens AG, and denying Defendants' Failure to State a Claim Motion. I also recommend denying as moot VMware's motion for leave to file a sur-reply.

## I.    BACKGROUND

VMware develops and licenses virtualization and cloud computing software. (D.I. 1 ¶ 6). Defendant Siemens AG is a German corporation headquartered in Munich, Germany. Siemens AG is the ultimate parent company of numerous subsidiaries operating worldwide, including several Siemens entities incorporated and operating in the United States. (D.I. 1 ¶¶ 1–2, 7–26.) The Affiliate Defendants are Siemens AG affiliates with principal places of business in the United States. (*Id.*)

On November 28, 2012, VMware and Siemens AG entered into a Master Software License Agreement ("MSLA"). D.I. 1 ("Complaint") ¶ 37; D.I. 25-1, Ex. 1 (MSLA) at 7.[1] Pursuant to the MSLA, a 2021 amendment thereof, and a separate 2021 Enterprise License Agreement ("ELA"), Siemens AG and the Affiliate Defendants obtained licenses to certain VMware software products and corresponding support services. (D.I. 1 ¶¶ 27–37, 40–50; D.I. 25-1, Ex. 2 (ELA) at Ex. A).

---

[1]    Defendants assert without objection from VMware that the Complaint incorporates the MSLA, ELA, and other correspondence between the parties by reference and I can consider those documents in resolving the pending motions. (D.I. 23 at 4 n.2 (citations omitted)).

2

Under the MSLA, Siemens AG allegedly acted as the contracting party responsible for compliance by the U.S.-based Affiliate Defendants. (*Id.* ¶¶ 39–41, 51.)

Siemens AG sent VMware a letter on September 9, 2024 (the "September 9 List"), seeking to renew support services for the VMware software products allegedly licensed under the MSLA and accompanying agreements. (*Id.* ¶¶ 59–70). But according to VMware, "the deployments of VMware products that Siemens AG reported in its September 9 List far exceeded the number of licenses it had actually purchased." (*Id.* ¶ 61). That is, VMware surmised that the list had identified a list of products that Defendants had downloaded, copied, distributed, and used for which they had never purchased a license. (*Id.* ¶¶ 61, 66–75).

The MSLA, governed by German law, obligates the parties to resolve "any dispute arising out of this Agreement" in Munich, Germany. (MSLA § 9.17). Consistent with § 9.17, the parties corresponded with each other throughout September and October 2024 utilizing German counsel in Germany to discuss Siemens AG's request for support, and VMware's corresponding view that Siemens AG's deployments were unauthorized. (D.I. 1 ¶¶ 62–70). VMware conditionally agreed to provide support services Siemens AG based on products identified in the September 9 List, "reserve[ing] the right to seek compensation for the unauthorized overage of its software and support services." (*Id.* ¶ 70.)

On October 29, 2024, Siemens AG "retracted" the September 9 List and sent VMware an updated list of products for which it sought support services (the "October 29 List"). (*Id.* ¶¶ 71–72). VMware asserts that Defendants "never provided a credible explanation of why it would have presented and insisted on the accuracy of the September 9 List, if it did not represent its actual deployment of VMware products." (*Id.* ¶ 4). As a result of Siemens AG's retraction, VMware surmised that the September 9 List illustrated "infringement of VMware's rights." (*Id.* ¶¶ 71–72;

3

105). Contending that Defendants "failed to rectify the situation by acknowledging its unlicensed and infringing use of VMware's copyrighted products and attempting to resolve the matter," VMware obtained copyright protection in the United States for its products, and filed suit in this Court. (*Id.* ¶ 75-67; *Id.* at Annex I).

VMware asserts claims for direct copyright infringement, contributory infringement, and vicarious infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* (*Id.* ¶¶ 90–112). VMware alleges that Defendants infringed its copyrights by copying, downloading, installing, using, and distributing VMware software without authorization, and that such acts occurred within the United States. (*Id.* ¶¶ 92–98). Specifically, VMware explains that Siemens AG centrally managed or controlled VMware software deployment across the Siemens corporate group, including tracking, allocation, and authorization of licenses. (*Id.* ¶¶ 54–58). And VMware says Siemens AG or its affiliates must have accessed VMware's customer portals and download servers, which were hosted on servers located in the United States, including California and Virginia, to obtain copies of VMware software. (*Id.* ¶¶ 56–61). According to VMware, the October 29 List shows that approximately 20% of the VMware products were deployed in Siemens operations in the United States (totaling more than 23,000 deployments) and therefore must have been downloaded, copied and/or distributed to and in the United States. (*Id.* ¶ 81). Thus, VMware says, these downloads occurred without sufficient licenses and constituted unauthorized copying of VMware's copyrighted software. (*Id.* ¶¶ 62–70).

Defendants move to dismiss VMware's complaint pursuant to the doctrine of *forum non conveniens*, arguing that MSLA § 9.17 requires the parties to litigate their dispute over allegedly unlicensed products in Germany. Defendants also move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction over Siemens AG and Rule 12(b)(6) for failure to state a claim for

4

extraterritorial infringement. VMware opposes, arguing that its copyright claims do not arise out

of the MSLA, that Siemens AG has sufficient contacts with the United States (and with Delaware),

and that the Complaint pleads domestic acts of infringement, including downloads from VMware

servers located in the United States.

## II.    LEGAL STANDARD

### A. Forum Selection Clause

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign

forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Const. Co., Inc. v. U.S.*

*Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 60 (2013). Before engaging in a *forum non*

*conveniens* analysis, the court must first determine whether the forum selection clause (1) is

enforceable; and (2) applies to the claim at issue. *AGB Contemp. A.G. v. Artemundi LLC*, No. 20-

1689, 2021 WL 1929356, at *7 (D. Del. May 13, 2021). The party seeking dismissal under the

*forum non conveniens* doctrine "bears the initial burden of establishing that the claims and parties

involved in the suit are subject to the forum-selection clause." *Brit. Telecommunications PLC v.*

*Fortinet Inc.*, 424 F. Supp. 3d 362, 368 (D. Del. 2019) (citing *Altvater Gessler-J.A. Baczewski Int'l*

*(USA), Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)). If the clause is

enforceable and the claims are within its scope, then the court weighs dismissal under *forum non*

*conveniens* by considering "the availability of an adequate alternative forum where defendants are

amenable to process and plaintiffs' claims are cognizable" and "relevant public interest factors

affecting the convenience of the forum." *Id.* (quoting *Collins on behalf of herself v. Mary Kay,*

*Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) and citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist.*

*Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). Those factors will overcome a forum

selection clause in only the most "unusual" and "extraordinary" circumstances. *AGB Contemp.*,

2021 WL 1929356, at *9 (quoting *Atlantic Marine*, 571 U.S. at 62, 64). "The party resisting application of a forum selection clause 'bears a heavy burden.'" *Id.* (quoting *Collins*, 874 F.3d at 186-87).

### B. Personal **Jurisdiction Under Rule 4(k)(2)**

For a court to exercise personal jurisdiction over a defendant under Rule 4(k)(2), there must be "(1) a claim arising under federal law; (2) the defendant [is] beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant [has] sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law." *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004) (citing Rule 4(k)(2)). "The 'minimum contacts' analysis under the third prong of this test is the same as a standard personal jurisdiction analysis, except that the relevant forum is the United States as a whole. *Xie v. Guanhe Home Essentials*, No. 25-0265, 2025 WL 1039233, at *3 (W.D. Pa. Apr. 8, 2025) (citing *Saudi*, 114 F. App'x at 455).

### C. Rule 12(b)(6)

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to

give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III.    DISCUSSION

Defendants seek dismissal on three grounds. First, Defendants maintain that the MSLA's forum selection clause encompasses VMware's claims, and as a result, VMware's claims should be dismissed under the doctrine of *forum non conveniens* so that the parties' dispute may resolved in Germany consistent with the MSLA. (D.I. 23 at 7–18). Second, Defendants argue that VMware's Complaint should be dismissed as to Siemens AG for lack of personal jurisdiction. (D.I. 18 at 6–12). Third, Defendants maintain that VMware's Complaint should be dismissed pursuant to Rule 12(b)(6) "to the extent it alleges copyright infringement for actions that occurred outside the United States." (*Id.* at 12–13).

### A. Whether the Forum Selection Clause Encompasses VMware's Claims

Defendants contend that VMware's Complaint "incorporated" the MSLA in its allegations (Tr. 27:8–18) and, as a result, VMware's claims constitute a "dispute arising out of" the MSLA under § 9.17. (D.I. 23 at 12). In response, VMware maintains its copyright claims do not amount to a dispute arising out of the MSLA, particularly where Defendants have not asserted the MSLA as an affirmative defense to VMware's allegations of copyright infringement. (D.I. 32 at 7–10).

7

And even if VMware's claims did fall within § 9.17, VMware says, they are "carved out" by § 9.18 permitting parties to seek "injunctions" over "intellectual property rights" anywhere. (D.I. 32 at 2).

The party seeking dismissal under the *forum non conveniens* doctrine "bears the initial burden of establishing that the claims and parties involved in the suit are subject to the forum-selection clause." *Brit. Telecommunications*, 424 F. Supp. 3d at 368 (citation omitted). A forum selection clause must be (1) enforceable; and (2) apply to the claim at issue. *AGB Contemp.*, 2021 WL 1929356, at *7. The parties do not dispute the MSLA's enforceability, so I focus only on its scope.

Although German law governs the MSLA, the parties agree that I may rely on "U.S. case law articulating general contract principles that align with German law" to consider the scope of the forum selection clause. (D.I. 23 at 9 n.5; Tr. at 34:25–22). Accordingly, I root my analysis in general contract law principles to "interpret a forum selection clause in accordance with its plain meaning and give effect to language that unambiguously states the parties' intentions." *AGB Contemp.*, 2021 WL 1929356, at *8 (citing *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 67 (3d Cir. 2018); *Otto v. Erie Ins. Exchange*, 11 F. Supp. 3d 482, 483 (E.D. Pa. 2014)). No party cites to any unique feature of German law that would alter this analysis.

Section 9.17 of the MSLA (the "forum selection clause") provides:

> **Governing Law.** This Agreement will be governed by the laws of the Federal Republic of Germany, without regard to conflict of law principles. The U.N. Convention on the International Sale of Goods shall not apply. The parties hereby consent to the exclusive jurisdiction of the courts of Munich for resolution of any dispute arising out of this Agreement.

(MSLA § 9.17). Section 9.18 (the "carve out") provides:

8

> Notwithstanding the foregoing, either party (including its Affiliates) may seek injunctions to prevent and/or stop any breach of, and otherwise enforce, its intellectual property rights of whatever nature and/or rights in confidential information in the courts of any country, state or other territory which accepts jurisdiction.

MSLA § 9.18. I discuss each section in turn.

### i.    Section 9.17

Defendants insist that I may dismiss this action based on the forum selection clause by looking to VMware's Complaint alone because "VMware's claims plainly grow out of the parties' contractual relationship concerning payments due under the MSLA." (*See, e.g.*, D.I. 32 at 11).[2] But "whether or not a forum selection clause applies depends on what the specific clause at issue says." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997). Even if I were to agree with Defendants that VMware may not "avoid a forum selection clause by pleading non-contractual claims," that principal alone does not permit me to enforce § 9.17 against VMware without considering  § 9.17's scope.

Turning to § 9.17's text to determine whether VMware's claims are "dispute[s] arising out of" the MSLA, I consider the Court of Appeals for the Third Circuit's decision *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48 (3d Cir. 2018), a case cited by both parties. (D.I. 32 at 8;

---

[2]    Indeed,  Defendants repeatedly focus on VMware's Complaint having "incorporate[ed]" the MSLA (Tr. 27:8–18), rather than rooting their argument in the text of § 9.17. *See* D.I. 35 at 2 ("Thus, the only question is whether this dispute arises under the MSLA. It clearly does, as shown by VMware's Complaint."); D.I. 32 at 12 ("Indeed, throughout the Complaint, VMware's allegations reveal that its claims *relate to a dispute* over payment under the MSLA and ELA for alleged over-deployment of software."); Tr. 27:8–18 ("The complaint, as in multiple places in describing the dispute, describing the basis for the allegation, refers to this license agreement and the term therein. For that reason, we are not saying that the complaint identifies an affirmative defense. We are saying the complaint has incorporated the MSLA. And because the complaint is properly considered to have incorporated the MSLA, that is why it is appropriate to look to the forum selection clause and grant the forum non conveniens motion."). Nevertheless, Defendants seem to later concede, the question is whether "the text of the forum selection clause cover[s] the dispute at hand." (D.I. 35 at 3).

D.I. 35 at 3–4). In *McGraw-Hill*, the Third Circuit held that a copyright claim was encompassed by a forum selection clause that read: "Any dispute regarding this Agreement shall be governed by the laws of the State of New York, and by Titles 15, 17 and 35 of the U.S.C. . . . and the parties agree to accept the exclusive jurisdiction of the state and federal courts located in New York, New York." *Id.* at 67. Focusing on the words "dispute" and "regarding" as part of the phrase "dispute regarding this Agreement," the Third Circuit reasoned that using the word "dispute" (unlike a word like "claim" or "proceeding") permits a contract to be implied by way of an affirmative defense. *Id.* Turning to "regarding," the court explained that it has a broader connotation than phrases like "arising under," "arising out of," or "arising in relation to," and means the same thing as "relates to," or having a "logical or causal connection." *Id.* at 67–68. Finally, the court noted that the forum selection clause identified federal copyright statutes as a source of law, which suggested that the forum selection clause was intended to encompass copyright disputes. *Id.* at 68. As a result, the Third Circuit held that the copyright actions were "'disputes regarding' the . . . agreements because the face of the complaints contemplate that licenses existed, and the language of the forum selection clause is broad enough to encompass actions in which the agreements are raised as an affirmative defense." *Id.*

Although Defendants maintain that the *McGraw-Hill* court enforced a forum selection clause against a copyright claim "which [was] less closely tied to the disputes in [that] case[] than the MSLA is to this case," (D.I. 35 at 4), *McGraw-Hill* does not compel finding that § 9.17 encompasses VMware's claims for at least three reasons.

First, the *McGraw-Hill* forum selection clause used the phrase "disputes regarding" while § 9.17 uses the phrase "disputes arising out of." *See Wyeth*, 119 F.3d at 1075 ("Drawing analogy to other cases is useful only to the extent those other cases address contract language that is the

same or substantially similar to that at issue."). Defendants do not address the distinction between the *McGraw-Hill* clause's use of the broader term "regarding" versus § 9.17's use of the narrower term "arising out of." And, Defendants cite no authority explaining what "arising out of" means.[3] Although at argument Defendants equated "regarding" and "arising out of" as "commensurate in scope," relying on *Wyeth* (Tr. 28:15–19), the *Wyeth* court did not analyze either term. *Wyeth*, 119 F.3d at 1072 (interpreting forum non selection clause that stated: "English Courts shall have exclusive jurisdiction in relation to any dispute arising under or out of or in relation to this Agreement." ). The only issue in front of the *Wyeth* court on appeal was what "arising in relation to" means, and the court found that "[t]o say a dispute 'arise [s] . . . in relation to' the [ ] Agreement is to say that the origin of the dispute is related to that agreement, i.e., that the origin of the dispute has some 'logical or causal connection' to the [ ] Agreement." *Wyeth*, 119 F.3d at 1074. Indeed, to the extent *Wyeth* has any bearing here, its analysis undermines Defendants' view, particularly as (1) the *Wyeth* court explained that "arising in relation to" is broader than the narrower term "arising

---

[3]      VMware points to *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) for its analysis of the phrase "arise out of." (D.I. 32 at 9–10). In *Phillips*, the Court of Appeals for the Second Circuit analyzed a forum selection clause providing that "any legal proceedings that may arise out of [the agreement] are to be brought in England." *Id.* at 386. Observing that "[t]o 'arise out of' means 'to originate from a specified source,' and generally indicates a causal connection," *Phillips*, 494 F.3d at 389 (quoting Webster's Third New International Dictionary 117 (1981) and *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)), the Second Circuit did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." *Id.* Although *McGraw-Hill* does not address *Phillips'* analysis of "arise out of," with respect to affirmative defenses and the word "disputes," *McGraw-Hill* went the other way. *See McGraw-Hill*, 909 F. 3d at 67 ("In *Phillips*, the forum selection clause applied not just to 'claims' but to 'proceedings.' But the Court held that 'reference to proceedings' did not require it 'to take into consideration the source of rights or duties asserted on defense.' Unlike the Second Circuit, we hold that the word 'disputes' allows the contract to be implicated by way of an affirmative defense.") (quoting *Phillips*, 494 F.3d at 391). In any event, to the extent *Phillips* remains good law post-*McGraw-Hill*, it confirms that "arising out of" is narrower than "regarding."

11

under," *id.*; (2) other courts have equated the phrase "arising under" as being of equivalent in meaning to "arising out of"—the language used in § 9.17; and (3) other courts have interpreted "arising under" as covering "only those disputes 'relating to the interpretation and performance of the contract itself.'" *See TrustID, Inc. v. Next Caller, Inc.*, No. 18-172-LPS-CJB, 2019 WL 1324948, at *2 (D. Del. Mar. 25, 2019) (citing *Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292 (9th Cir. 1994)); *Tracer*, 42 F.3d at 1295 (citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)). So, whatever "disputes arising out of" means in § 9.17, Defendants have not established that it means the same thing as "disputes regarding" as in *McGraw-Hill*.

Second, unlike the *McGraw-Hill* forum selection clause that identified federal copyright statutes as a source of law, suggesting to the court that copyright claims fell within its scope, § 9.17 does not contain any such reference. In fact, the only arguable reference to copyright law is found in § 9.18 (the carve out), which provides that "injunctions to prevent and/or stop any breach of, and otherwise enforce, its *intellectual property rights*" may be brought "in the courts of any country, state or other territory which accepts jurisdiction." (MSLA § 9.18 (emphasis added)). Defendants do not differentiate § 9.17 or § 9.18 from *McGraw-Hill* on this point. That the MSLA omits any reference to copyright law in § 9.17 but specifically identifies "intellectual property rights" in the carve out does not help Defendants' view that VMware's copyright claims fall within § 9.17.

Finally, while the term "disputes" appears to be the only element potentially common to both § 9.17 and the *McGraw-Hill* forum selection clause, the *McGraw-Hill* court explained that the "disputes regarding" the agreements "is broad enough to encompass actions in which the

agreements *are raised* as an affirmative defense." *Id.* at 68 (emphasis added).[4]  But *McGraw-Hill* does not compel dismissal where, as here, despite affording Defendants multiple opportunities to clearly and unequivocally state that they will raise the MSLA as an affirmative defense to VMware's allegations of copyright infringement, Defendants declined to do so.

   For example, Defendants could have maintained that the MSLA operates as an affirmative defense in their reply to VMware's answering brief, particularly in light of VMware's argument that *McGraw-Hill* is inapplicable because "Defendants have not shown that the MSLA gives them an affirmative defense." (D.I. 32 at 9). But instead of rebutting VMware's contention, Defendants took the position that they did not need to do so, doubling-down on their view that VMware's claims alone bring the dispute within the MSLA. (D.I. 35 at 5 n.7, "VMware repeatedly references possible affirmative defenses Defendants may advance when or if they answer. That misses the mark for two reasons. First, *McGraw-Hill* makes clear an affirmative defense is a sufficient reason to dismiss a case for *forum non conveniens* in the Third Circuit where the forum selection clause applies to 'disputes.' But second, and at least as importantly for this motion, VMware's own claims arise out of the MSLA, regardless of any defenses Defendants may raise when or if they answer VMware's Complaint.").  In another example, I asked Defendants at argument whether I should deny without prejudice their co-pending Rule 12 motions to permit them to answer and plead the MSLA as an affirmative defense to resolve in their favor any lingering doubt over the MSLA's applicability under *McGraw-Hill*. (Tr. 23:3–10). While Defendants advised that they would plead that they are "licensed," they did not invoke the MSLA specifically. (Tr. 23:15–23 ("I can tell you if we are to file an answer after the Rule 12 motions are relied upon, then yes, one of the affirmative

---

[4]     Even VMware seems to agree that the parties' dispute could fall within the MSLA's scope so long as Defendants invoked the MSLA as an affirmative defense. (Tr. 22:16–22).

defenses that would be pled at that point I time is that we are licensed for this. But forcing Siemen

[sic] to effectively waive its Rule 12 motions to be able to get the benefit of the forum selection

clause that should govern here is I think a difficult position to put us in when the complaint itself

has clearly incorporated the MSLA in its allegation.")). As the discussion continued, Defendants

further equivocated:

> COURT: . . . [I]f you want to clear this up and you want the Court
> to rule on forum non conveniens and you want to make sure that it's
> crystal clear and belt and suspender for the inevitable objection and
> appeal that you have pled an affirmative defense this is just the
> cleanest way to do it. You can do whatever you wish.
>
> [COUNSEL FOR DEFENDANTS]: . . . There are choices to be
> made here. We think our Rule 12 motions are meritorious. We think
> the forum non conveniens motion can and should be granted now
> given the way this complaint was put together given that we have
> this license agreement cited multiple times and clearly incorporated
> within the scope of the complaint that's here. If Your Honor tells us
> that the ruling is or I guess the report and recommendation on this
> would be that we would -- we would have the forum non conveniens
> and motion granted if we filed an answer with an affirmative
> defense. To be clear, I don't hear at this point VMWare agreeing that
> this case would go to Germany if that were to happen, which is part
> of my concern with our motions under Rule 12. Then I think,
> frankly, Your Honor, at that point I need to talk to the client on what
> they want to do with respect to the relevant motions here.

(Tr. 24:1–25). And when I asked the parties for supplemental briefing on how an affirmative

defense must be raised under *McGraw-Hill*,[5] Defendants wrote that, "*McGraw-Hill* confirms the

---

[5]    The mechanism by which an affirmative defense must "raised" to the Court post-*McGraw-Hill* seems to be an unanswered question. On this point, I asked the parties to submit supplemental letter briefing on whether, under *McGraw-Hill*, "an affirmative defense needs to be pled or merely asserted or in a briefing or . . . represented to the court [by counsel] that they intend to [so] plead." (Tr. 35:1–8; D.I. 39 (VMware's letter); D.I. 40 (Defendants' letter)). Because Defendants have not indicated that they intend to raise the MSLA as an affirmative defense, but rather say that they need not do so, I do not reach this question.

14

forum selection clause of the MSLA can be invoked without an affirmative defense."
(D.I. 40 at 2).

      *ii.*     *Section 9.18*

      VMware contends that, even if Defendants could establish that VMware's copyright claims arise out of the MSLA, VMware's suit falls within the carve out in § 9.18. Under § 9.18, "either party . . . may seek injunctions to prevent and/or stop any breach of, and otherwise enforce, its intellectual property rights of whatever nature . . . in the courts of any country, state or other territory which accepts jurisdiction." (MSLA § 9.18). Here, VMware seeks, *inter alia*, "injunctive relief prohibiting Siemens from continuing to violate VMware's copyrights, including without limitation through infringement of VMware's copyrights." (D.I. 1 Prayer for Relief item (c) at 34; *Id.* ¶ 108). Although Defendants characterize VMware's Complaint as using the word "injunction" to "end-run the forum selection clause" because it "cites no allegation that it has suffered irreparable harm, nor . . . filed a motion seeking injunctive relief" (D.I. 35 at 6), § 9.18 on its face is not confined to preliminary injunctions and does not otherwise require a party to plead irreparable harm. Indeed, a "final injunction" is a form of relief in copyright cases. 17 U.S.C. § 502(a). Whether VMware will prevail in obtaining an injunction is not the standard under which § 9.18 may be invoked. (MSLA § 9.18, permitting a party to "seek injunctions").

      Defendants further maintain that § 9.18 is not an "unrestricted 'carve out' for all intellectual property claims" because in their view, the fact that § 9.18 "only excepts injunctions from § 9.17 indicates the parties intended § 9.17 to apply to "basic copyright claim[s]." (D.I. 35 at 5). Defendants cite no authority supporting their interpretation. And an interpretation shoehorning whatever Defendants maintain constitutes a "basic copyright claim" into § 9.17 is undermined by the language used in § 9.17 and § 9.18. (*Compare* MSLA § 9.17, "parties hereby consent to the

exclusive jurisdiction of the courts of Munich for resolution of any dispute arising out of this Agreement," *with* MSLA § 9.17, "Notwithstanding the foregoing, either party . . . may seek injunctions to prevent and/or stop any breach of, and otherwise enforce, its intellectual property rights of whatever nature . . . in the courts of any country, state or other territory which accepts jurisdiction.").

\* \* \*

Under these circumstances at this stage, I cannot conclude that § 9.17 encompasses VMware's copyright claims where Defendants primarily argue that VMware's Complaint "clearly incorporated the MSLA in its allegations," do so without meaningfully addressing the meaning of § 9.17, and have ducked multiple invitations to confirm that they intend to raise the MSLA as an affirmative defense consistent with *McGraw-Hill*. Further, Defendants have not articulated a basis for me to agree that VMware's copyright claims do not all within § 9.18's carve out. Accordingly, Defendants have not met their burden at this stage to establish that VMware's claims are within the forum selection clause's scope, and I need not weigh dismissal under the *forum non conveniens* factors. *Brit. Telecommunications*, 424 F. Supp. 3d at 368 (citation omitted). Therefore, I recommend denying the *Forum Non Conveniens* Motion.

## B. Whether Siemens AG Should Be Dismissed for Lack of Personal Jurisdiction

Defendants argue that Siemens AG is not subject to general or specific jurisdiction in Delaware (D.I. 18 at 6–11) and that they have not specifically directed activities to the United States (as opposed to worldwide). (*Id.*). VMware responds in a rather cursory fashion (D.I. 31 at 7), putting most of its emphasis on asserting that Siemens AG is subject to personal jurisdiction under Rule 4(k)(2). Jurisdiction under Rule 4(k)(2) requires that there be "(1) a claim arising under federal law; (2) the defendant [is] beyond the jurisdictional reach of any state court of general

jurisdiction; and (3) the defendant [has] sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law." *Saudi*, 114 F. App'x at 455 . Each of the three prongs must be satisfied. The parties agree that VMware's claim for copyright infringement satisfies the first prong under Rule 4(k)(2). They disagree, however, on the second and third prongs. I start with the second prong.

Citing Federal Circuit law, VMware argues that the second prong of Rule 4(k)(2) is met because Siemens AG has "fail[ed] to identify any other state in which it is subject to jurisdiction for purposes of adjudicating VMware's claims . . . ." (D.I. 31 at 5). Siemens AG counters that for copyright claims the law is of the regional circuit court, not the Federal Circuit. (D.I. 34 at 4). Under this law, Siemens AG says, it is plaintiff that bears the burden of putting forth an affirmative representation that a defendant is not subject to the general jurisdiction of any state court, and VMware has failed to do so. (*Id.*). (D.I. 34 at 4, 4 n. 2). While it is true that some courts in the Third Circuit employ the approach espoused by Siemens AG, not all do. Rather, some courts in the Third Circuit, like this Court in *King v. Bon Charge*, have applied a burden-shifting approach. No. 25-00105-SB, 2025 WL 3764039, at *2 (D. Del. Dec. 30, 2025). Under this approach, a plaintiff is required to "make out a prima facie case that Rule 4(k)(2) applies." *Id.* Once it does, a defendant is required to "produce evidence (1) that it could be subject to suit in one or more states, or (2) that exercising jurisdiction under Rule 4(k)(2) would violate the Constitution." *Id.* (citing cases). The Third Circuit has not weighed in on the circuit split or endorsed one framework over another. *King* makes a compelling argument for the burden-shifting approach, I agree with

its reasoning as set forth therein, so I will adopt that approach for this case.[6] *See King*, 2025 WL 3764039, at *3.

I turn first to whether VMware has made out a *prime facie* case for jurisdiction under Rule 4(k)(2). The First Circuit suggests that, to do so, a plaintiff must at least certify that "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." *U.S. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999). In the usual jurisdiction analysis in the District of Delaware, "[w]here no evidentiary hearing on personal jurisdiction has occurred, a plaintiff bears the burden of alleging facts sufficient to make out a *prima facie* case of personal jurisdiction over the defendant." *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 475 (D. Del. 2021) (cleaned up). Whether the plaintiff must certify, as in the First Circuit, or must allege sufficient facts, as in the District of Delaware, or anywhere in between, VMware has not done it. The Complaint is devoid of any allegations that could be read to state that Siemens AG is not subject to any state's courts of general jurisdiction. And, VMware does not even assert as much in its answering brief opposing Siemens AG's motion to dismiss (D.I. 31).[7]

---

[6]    In *King*, the Honorable Stephanos Bibas wrote, "I apply the burden-shifting approach. The weight of out-of-circuit authority supports it. Plus, it makes practical sense, avoiding the difficulties (for courts and litigants alike) of "'traips[ing] through the 50 states" each time a plaintiff invokes Rule 4(k)(2)." *King*, 2025 WL 3764039, at *3 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); and citing 4 *Wright & Miller's Federal Practice & Procedure* § 1068.1 (4th ed. 2008 & Supp. 2025) (endorsing burden-shifting approach)).

[7]    Two things are worth pointing out. First, it seems like VMware cannot decide how it wants to argue that this Court has personal jurisdiction over Siemens AG. VMware's Complaint does not allege that Siemens AG is not subject to jurisdiction in any other state's courts of general jurisdiction. In its answering brief opposing Siemens AG's motion to dismiss, VMware doesn't really engage on general and specific jurisdiction, instead relying entirely on Rule 4(k)(2). (D.I. 31 at 4). But in its discussion of the third prong of Rule 4(k)(2)—the minimum contacts analysis— VMware reverts to arguing that the Complaint adequately alleges contacts with Delaware. (*Id.* at 7). Second, for the avoidance of doubt, even if VMware had made the requisite *prima face*

Having found that VMware has failed to make a *prima facie* showing of personal jurisdiction over Siemens AG, I recommend that Siemens AG's Personal Jurisdiction Motion on that basis be granted.

### C. Whether VMware's Complaint Should Be Dismissed for Failing to Allege an Act of Copyright Infringement in the United States

Defendants argue that VMware's Complaint should be dismissed "to the extent it alleges copyright infringement for actions that occurred outside the United States." (D.I. 18 at 12). Specifically, Defendants seek to exclude from the scope of VMware's action any "deployment [of the allegedly-infringing product] that's coming from Siemens AG and not going to the United States." (Tr. 48:23–49:4; Tr. 51:8–13, "What I heard at this point is hopefully what I understood is that VMWare is committing to us and this court that it's not going to allege that if Siemens AG downloaded software or anything that could be from outside the U.S . . . [then] that is an act of U.S. copyright infringement."). At argument, VMware represented that it is "not going to have a claim under U.S. copyright law that doesn't entail an infringing act in the United States because U.S. copyright law is not extraterritorial." (Tr. 52:18–21). Thus, there does not appear to be a dispute between the parties as to what the law requires.

---

showing, or even if it was correct that the burden falls on Siemens AG to affirmatively identify a state court of general jurisdiction in which it would have been subject to jurisdiction at the time of the filing of the Complaint to defeat the application of Rule 4(k)(2), VMware has not established that the exercise of personal jurisdiction over Siemens AG comports with due process requirements. VMware has not shown that Siemens AG purposefully directed its activities to the United States. As Siemens AG argues, its worldwide license does not support a finding that it purposefully directed its activities at the United States. (D.I. 34 at 5), As explained by Siemens AG, the cases on which VMware relies to show purposeful availment are all distinguishable. (*Id.* at 6–7). Nor do the cases cited by VMware support that downloading software from a U.S.-based server from Germany is sufficient to confer jurisdiction. And, VMware does not grapple at all with the reasonableness analysis under Rule 4(k)(2) as set forth in *Burger King*, leaving me to conclude that it has waived its arguments on that point. VMware did not seek leave to file a sur-reply on anything to do with personal jurisdiction.

To the extent Defendants dispute what facts VMware may obtain or use to ultimately prove what constitutes an "infringing act in the United States," Defendants' arguments seem better suited for the discovery process. *Compare* Tr. 49:6–12, "And for, at minimum, efficiency purposes at this point and to properly set what the scope of this case should be, we think it would be appropriate to rule now given that we know based on the VMWare allegation that a substantial majority of what they appear to be seeking is legally noncognizable in the United States that it's appropriate to dismiss," *with United States v. Curo Health Servs. Holdings, Inc.*, No. 13-672, 2022 WL 842937, at *10, 12, n.7 (M.D. Tenn. Mar. 21, 2022) (declining to dismiss any aspect of the plaintiffs' claims at Rule 12(b)(6) stage when defendants' "request to narrow the scope of the case is motivated, at least in part, by a desire to limit excessively burdensome or intrusive discovery" because defendants are "not prevent[ed] . . . from objecting to the breadth or burden of any specific discovery request").

Therefore, I recommend denying Defendants' Failure to State a Claim Motion.

## IV.    CONCLUSION

For the reasons set forth above, I recommend denying Defendants' *Forum Non Conveniens* Motion (D.I. 22), granting Defendants' Personal Jurisdiction Motion as to Siemens AG (D.I. 17), and denying Defendants' Failure to State a Claim Motion (D.I. 17). I also recommend denying as moot VMware's motion for leave to file a sur-reply (D.I. 41).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 10, 2026

_____
Laura D. Hatcher
United States Magistrate Judge

21